**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:20CV1281

IFETCH, LLC,

                Plaintiff,

     v.

SHENZHEN COOLMATE LTD,

                Defendant.

## COMPLAINT

Plaintiff iFetch, LLC, by and through its undersigned counsel, brings this action against Shenzhen Coolmate Ltd., and in doing so states and alleges as follows:

### THE PARTIES

1. iFetch, LLC ("iFetch") is a family-owned Texas limited liability company with its principal place of business located at 2204 Manana Street, Austin TX 78730.

2. Upon information and belief, Shenzhen Coolmate Ltd. ("Defendant") is a foreign entity with its principal place of business located at China Area A, F1, #61, Changxin Industrial Park, Komeito Village, Guangming District, Shenzhen, China 518000.

3. The Defendant does business under the name iDogmate. On December 20, 2016, Defendant filed for the registration of its iDogmate trademark with the United States Patent and Trademark Office, claiming a first use date of November 15, 2016.

## JURISDICTION AND VENUE

4.      This action arises under the patent laws of the United States, Title 35, United States Code, and the trademark laws of the United States, Title 15, United States Code, and the Lanham Act, 15 U.S.C. 1051, *et seq*.

5.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

6.      This Court also has original subject matter jurisdiction of this action under 28 U.S.C. § 1332, in that it is a civil action between citizens of different states, or citizens or subjects of a foreign state, and the subject matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs.

7.      28 U.S.C. § 1400(b) provides that any civil action for patent infringement may be brought in the judicial district where the defendant resides. In this case, the Defendant is a foreign entity and therefore does not reside in any judicial district. However, jurisdiction and venue are proper in this district because a "defendant not resident in the United States may be sued in any judicial district." 28 U.S.C. § 1391(c)(3). *See In Re HTC Corporation*, 889 F.3d 1349 (Fed. Cir. 2018).

8.      Personal jurisdiction and venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1400(b) because the acts of infringement which form the basis of this action occurred within this District. Defendant has engaged in activities such as offering to sell and/or selling its infringing products in this District.

## GENERAL ALLEGATIONS

### A.    The Patents-At-Issue

9.      On May 24, 2016, The United States Patent and Trademark Office ("USPTO") issued a United States Patent, Patent No. 9,345,946 entitled "Pet Exercise and Entertainment Device" (the "'946 Patent").

10.     The '946 Patent was invented by Dennis W. Hamill and five other inventors (all inventors referred to as "Hamill"). iFetch is the assignee of the '946 Patent.

11.     The '946 Patent describes a novel device and method for exercising and entertaining a pet, such as a pet exercise and entertainment device with a launch funnel for launching balls for a pet to retrieve.

12.     A drawing of an example implementation of this claim is depicted below:



13.     Claims 10 through 20 of the '946 Patent covers the following methods:

> 10. A method for providing pet and entertainment, the method comprising:
> receiving a projectile into a feeder having a wide mouth that tapers
>    in diameter from an edge to an intake end of a chute;

transporting the projectile from the feeder into the intake end of a
chute; sensing the projectile in the intake end of the chute;
powering up one or more motors in response to sensing the
projectile in the intake end of the chute, the one or more motors
rotating one or more wheels;
automatically releasing the projectile from the intake end of the
chute into a launch end of the chute, after a pre-determined time
has elapsed, in response to when the sensor sensed the projectile
in the intake end of the chute; and
launching the projectile from the launching end of the chute using
the one or more wheels.

11. The method of claim 10, wherein the pre-determined time
corresponds to an amount of time for the one or more motors to
power up.

12. The method of claim 11, wherein the amount of time for the
one or more motors to power up corresponds to a length of time for
the one or more wheels to reach a designated rotations per minute
speed.

13. The method of claim 12, wherein the designated rotations per
minute speed ranges from approximately 4,900 to 14,000 rotations
per minute.

14. The method of claim 12, wherein the designated rotations per
minute speed sets a launch distance of the projectile.

15. The method of claim 14, wherein the launch distance of the
projectile is approximately 20 feet.

16.  The method of claim 10, wherein the projectile is transported
from the feeder to the intake end of the chute using gravity.

17. The method of claim 10, wherein the projectile is sensed in the
intake end of the chute using a switch.

19. The method of claim 10, further comprising:
powering down the one or more motors in response to launching
the projectile from the launching end of the chute.

20. The method of claim 10, wherein the projectile is launched at
an arc.

14. On May 24, 2016, Hamill filed U.S. Application No. 15/163,164 (the "'164 Application"). On November 6, 2018, the '164 Application matured into U.S. Patent No. 10,117,419 (the "'419 Patent").

15. Claims 1 through 5 of the '419 Patent covers the following methods:

> 1. A method for providing interactive fetching of a projectile for a pet, the method comprising:
> receiving a the projectile from the pet in a feeder disposed in a housing opening;
> directing the projectile from the feeder into an interior of the housing through an opening defined by an intake end of a chute;
> sensing the projectile in within the interior of the housing using at least one sensor;
> automatically transporting the projectile from the intake end of the chute to a launch end of the chute after a predetermined time has elapsed from when the at least one sensor sensed the projectile in within the interior; and
> automatically launching the projectile from the launch end of the chute through a launch opening in the housing for the pet to retrieve.
>
> 3. The method of claim 1, wherein the intake end of the chute is connected to the launch end of the chute.
>
> 4. The method of claim 1, wherein the projectile is launched using at least one wheel.
>
> 5. The method of claim 1, wherein a launch distance of the projectile is preset.

## B.     iFetch's Trade Dress

16. iFetch has been and is now engaged in the manufacture and sale of pet toys.

17. Since at least February 14, 2014, iFetch has been selling its iFetch ball launcher pet toy ("iFetch Launchers") in commerce within the United States.

18. Since their introduction, iFetch has consistently used a distinctive trade dress for its iFetch Launcher, including its glossy-white body contrasting with other colors ("Trade

Dress"). Because of that use, the Trade Dress of the iFetch Launcher has acquired distinctiveness within the marketplace and has come to identify iFetch as the source of the iFetch Launcher. Representative examples of the Trade Dress are depicted below:



19.     iFetch owns a registered trademark for its Trade Dress. The Trade Dress is registered on the Supplemental Register as U.S. Registration No. 5,777,742 for "pet toys" in International Class 28.

20.     Under 15 U.S.C. 1057, the filing date of iFetch's application, July 19, 2016, constitutes constructive use of the Trade Dress, conferring a right of priority, with nationwide effect.

21.     The registration of the Trade Dress describes it as follows:

The mark consists of the relative placement of a glossy white finish on a dog toy. A glossy, white-colored finish is applied to the central portion of the dog toy. The overall shape of the dog toy appears in broken lines, and serves only to show relative placement of the claimed features of the mark. The color black is used for contrast to designate areas that are not claimed as part of the mark. The matter shown in dotted lines is not claimed as a feature of the mark but is shown for placement purposes only.



22.    iFetch has expended substantial monies marketing, advertising, and promoting its Trade Dress and, through such sales and advertising, has generated substantial goodwill and customer recognition in such Trade Dress.

23.    iFetch has derived substantial revenues from its sales of goods under the Trade Dress.

24.    As a result of the marketing, sales and success of the iFetch Launchers featuring the Trade Dress, and the public's widespread recognition and use of the iFetch Launchers, such iFetch Launchers have come to be, and now are, well and favorably known under the Trade Dress as products of high quality.

25.    The Trade Dress has become distinctive for iFetch's goods and is well-known and valuable goodwill has been built up in the Trade Dress.

C.    **The Defendant's Products**

26.    Defendant makes, uses, sells, offers for sale, and/or imports dog launching products that infringe at least claims 10, 11, 12, 14, 17, 19 and 20 of the '946 Patent, claims 1 through 5 of the '419 Patent, and the iFetch Trade Dress. These products include at least the iDog Midi (including the iDog Midi IDM600 and the iDogmate Big Automatic Pet Dog Ball Thrower), and the iDog Small (including the iDog Mini IDM400 and the iDogmate Small

Automatic Pet Dog Ball Thrower) (the "Accused Products"). There are no non-infringing uses for these products.

27.     Photographs of the Accused Products are depicted below:

 

iDogmate Midi and Mini Products

  

Intake End of the Chute with Actuator            Launch End of the Chute

28.     On or about June 9, 2017, iFetch became aware of the Accused Products, which included a glossy-white body in contrast to other colors. Based on a reasonable inquiry, iFetch was unable to find any evidence that the Accused Products were marketed or sold in the United States prior to July 19, 2016.

29.     On June 9, 2017, iFetch sent a letter, through counsel, to Defendant informing it that its Accused Products infringe its '946 Patent and demanding that it immediately cease and

desist any making, using, selling, offering for sale, or importation of the Accused Products in this country.

30.     On July 2, 2017, Defendant provided a response wherein it indicated that it would cease and desist its infringing activity. In doing so, it stated that it has decided to revise its Accused Products in a way that will make them truly unique and non-infringing. Despite this promise, Defendant continues its infringing activity.

31.     On December 9, 2017, iFetch sent a letter to Defendant regarding its continued importation and/or sale of the Accused Products in the United States. In that letter, iFetch asked that Defendant cease and desist any making, using, selling, offering for sale, or importing the infringing Accused Products in this country.

32.     On December 12, 2017, Defendant responded, stating that it has invested significant resources to change the design of the Accused Products, but that such changes have been made to the inside of the launcher, as opposed to its outward appearance.

33.     On January 31, 2018, iFetch wrote Defendant and acknowledged its statements regarding the alleged new design, but noted that it failed to provide any evidence that such changes would avoid infringement. It then requested that Defendant provide a description of the changes made, along with photographs evidencing these alleged changes. It also requested an affirmative statement that neither the Defendant nor any of its affiliates will make, sell, offer to sell, use, or import products that operate in a manner that infringes the '946 Patent.

34.     On August 10, 2018, and September 21, 2018, iFetch wrote Defendant additional correspondence, again explaining its infringement position and renewing its demands that Defendant cease and desist selling the infringing Accused Products.

35. On October 12, 2018, Defendant wrote iFetch claiming that the Accused Products "arguably" do not infringe the claims of the '946 Patent.

36. Defendant continues to market and sell the Accused Products within the United States. In fact, a representative of the Defendant named Lucy Qian was recently seen selling the Accused Products at the SuperZoo trade show in Las Vegas, Nevada, United States that occurred from June 25, 2018 through June 28, 2018. *See* photographs below.





37.     Below is a screen shot from the Defendant's website taken on March 31, 2020,

clearly depicting the Accused Product.



11

## FIRST CLAIM FOR RELIEF
**Patent Infringement**

38.     iFetch repeats the allegations in the preceding paragraphs as though fully set forth herein.

39.     Hamill, on behalf of iFetch, invented a new and useful process and machine and was duly granted the '946 pursuant to 35 U.S.C. § 101, *et seq*.

40.     Hamill assigned the '946 Patent to iFetch, and such assignment was effective as of the date of issuance.

41.     On November 6, 2018, the '419 Patent issued.

42.     Hamill assigned the '419 Patent to iFetch, and such assignment was effective as of the date of issuance.

43.     By making, using, offering for sale, selling, and/or importing the Accused Products, Defendant has infringed claims 10, 11, 12, 14, 16, 17, 19, and 20 of the '946 Patent.

44.     By continuing to make, use, offer for sale, sell, and/or import the Accused Products, Defendant infringes claims 1, 3, 4, and 5 of the '419 Patent.

45.     The Accused Products were made and sold by the Defendant. The design of the Accused Products dictate the performance of the steps of using them. Once the Accused Products are used, the devices automatically perform all of the steps of the asserted method claims. Once the ball is dropped into the device, only the Defendant's actions are involved in performing the remaining steps of the asserted method claims. Therefore, the Defendant infringes the asserted claims of the '946 Patent and the '419 Patent.

46. Defendant directly performs the steps of the methods of the '946 Patent and the '419 Patent when they use the Accused Products. Videos of such use are displayed on the Defendant's website www.idogmate.com.

47. There are no non-infringing uses for the Accused Products.

48. The Defendant also infringes the '946 Patent and the '419 Patent by inducing others to directly infringe those patents. For example, the Defendant actively encourages others to use its product, and sells its Accused Products which can only be used in an infringing manner by its customers. These sales include sales to retailors, end-use customers, and other purchasers.

49. Defendant knows from the foregoing correspondence with counsel for Plaintiff, its knowledge of the '946 Patent and the '419 Patent, and otherwise, that anyone who uses the Accused Products infringe the asserted method claims of those patents. Defendant advertises its products to be used in an infringing manner by anyone who decides to use the Accused Products for its intended, and only, use. Defendant also provides instructions and videos to demonstrate the use of the Accused Products to others. Any user of an Accused Product performs all of the steps of the asserted method claims. Defendant's encouraging acts actually resulted in the direct infringement of the method claims of the '419 Patent and the '946 Patent.

50. iFetch is being irreparably harmed by the Defendant's continued infringement and, unless each of the Defendant and its respective agents, employees, representatives, affiliates and all others acting in concert with it are enjoined from infringing the '946 Patent, iFetch will continue to be irreparably harmed.

51. iFetch has no adequate remedy at law.

52.     The Defendant's continued infringement of the '946 Patent and the '419 Patent is causing iFetch injury, and iFetch is entitled to recover damages in an amount to be proven at trial. Among other remedies, iFetch is entitled to lost profits or, in the alternative, no less than a reasonable royalty.

53.     Any use, sale, offer for sale, importation, or manufacture of infringing Accused Products will demonstrate objectively reckless conduct with respect to iFetch's patent rights. As a result, any such continued infringement constitutes willful infringement of the '946 Patent and the '419 Patent, and entitles iFetch to treble damages and attorneys' fees, costs incurred in this action, and prejudgment interest under 35 U.S.C. §§ 284 and 285.

54.     iFetch has a substantial likelihood of success on the merits. If an injunction is not granted, it would likely suffer irreparable injury. iFetch's threatened injury from the continued sale of the Accused Products outweighs any harm to the Defendant under an injunction. An injunction would not be adverse to the public interest. Therefore, iFetch seeks an injunction permanently restraining Defendant from making, using, selling, offering for sale, importing, or marketing the Accused Products.

## SECOND CLAIM FOR RELIEF
### Product Design Trade Dress (15 U.S.C. § 1125(a))

55.     iFetch repeats the allegations in the preceding paragraphs as though fully set forth herein.

56.     Upon information and belief, Defendant had acquired no rights in the coloring of its product for "pet toys" in the United States prior to February 14, 2014, or any time thereafter.

57.     The iFetch Trade Dress is inherently distinctive and/or has become distinctive through acquisition of secondary meaning.

14

58.     The iFetch Trade Dress is non-functional.

59.     The Defendant has infringed, and continues to infringe, iFetch' Trade Dress with the marketing and selling of its Accused Products.

60.     Examples of Defendant's Accused Products that infringe the Trade Dress are depicted below. They include a glossy white-colored finish applied to the central portion of the toy.

   

iDogmate Midi Accused Product     iDogmate Mini Accused Product

61.     Defendant's use of a glossy white finish on its Accused Product is similar in sight, sound, connotation, and overall commercial impression to iFetch's Trade Dress.

62.     Defendant's Accused Products are identical or confusingly similar to the iFetch Launcher, and they incorporate the Trade Dress within their design.

63.     Defendant's Accused Products are sold in identical or similar channels of trade as the iFetch Launcher, and are purchased by the same or similar consumers.

64.     The Defendant's use of the Trade Dress on the Accused Product, including the glossy white finish, is likely to cause consumer confusion, mistake or deception in the trade and among consumers as to the source, origin or sponsorship of the respective goods.

65.     If Defendant is permitted to continue to use the Trade Dress in connection with its Accused Products, the confusion will result in irreparable damage and injury to iFetch. Such confusion would be caused by the similarity between Defendant's Accused Products, including their coloring, and the protected features of the Trade Dress. Persons familiar with iFetch's product would be likely to buy the Accused Products believing that they are provided by, endorsed by, or associated with iFetch, which is not the case. Furthermore, any defect, objection or fault found with the Accused Products using the Trade Dress would necessarily reflect upon and seriously injure the reputation which iFetch has established for its iFetch Launchers provided under its trade dress.

66.     Potential customers have been confused, and likely will continue to be confused, by Defendant' use of the Trade Dress in connection with the Accused Products and, as a result of that confusion, may think that the Defendant is affiliated, connected or associated with iFetch or that its Accused Products originated with, or are sponsored or approved by, iFetch.

67.     Pursuant to 15 U.S.C. § 1125(a), the Defendant is liable for damages in an amount to be determined at trial.

## JURY DEMAND

iFetch demands a trial by jury on all claims and issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, iFetch requests that this Court enter judgment in its favor and against the Defendant on all claims as follows:

A.     Finding, declaring and adjudging that the Defendant has infringed the '946 Patent;

B.     Finding, declaring and adjudging that the Defendant has infringed the '419 Patent;

16

C. Finding, declaring and adjudging that Defendant has infringed iFetch's Trade Dress;

D. Awarding iFetch damages against Defendant in an amount adequate to compensate iFetch for the patent infringement that has occurred, but in no event less than a reasonable royalty as permitted by 35 U.S.C. § 284;

E. Awarding iFetch damages in an amount adequate to compensate it for the infringement of its Trade Dress in an amount to be determined at trial, but no less than (1) Defendant's profits, (2) any damages sustained by iFetch, and (3) the costs of the action pursuant to 15 U.S.C. § 1117;

F. Enjoining Defendant, and its officers, directors, members, managers, agents, employees, shareholders and/or affiliates, and all others acting in concert with Defendant, from any further making, using, selling, offering for sale, importing, or marketing the Accused Products or any other product that infringes the '946 Patent, the '419 Patent, or iFetch' Trade Dress;

G. Finding the Defendant' infringement to be willful and awarding iFetch three times the amount of the Defendant's actual damages pursuant to 35 U.S.C. § 284;

H. Finding this to be an exceptional case under 35 U.S.C. § 285 and 15 U.S.C. § 1117 and awarding iFetch its costs (including expert witness fees), disbursements, and reasonable attorney fees incurred in this action, and such other relief as may be appropriate;

I. Awarding iFetch pre-judgment interest and post-judgment interest as allowed by law; and

J. Granting such other and further relief as this Court may deem just and proper.

DATED this 7th day of May 2020.

s/ *Michael P. Dulin*

Michael P. Dulin
**POLSINELLI PC**
1401 Lawrence Street, Suite 2300
Denver, CO 80202
Telephone: 303-572-9300
FAX: 303-572-7883
E-mail: mdulin@polsinelli.com
*Attorneys for Plaintiff iFetch, LLC*

Address of Plaintiff:
2204 Manana Street
Austin TX 78730